IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No. 19-cv-00353-RBJ

DONALD WILLIAM SCHMITZ,

      Plaintiff,

v.

COLORADO STATE PATROL,
STATE TROOPER BEN EVANS, individually and in his official capacities with
Colorado State Patrol,
UNKNOWN SUPERVISOR, Colorado State Patrol,
PARK COUNTY SHERIFF'S OFFICE,
SGT. JENNIFER PLUTT, in her individual and official capacities with Park County
Sheriff's Office,
SGT. COOPER, in his/her individual and official capacities with Park County Jail,
DEPUTY LEDVINA, in his/her individual and official capacities with Park County Jail,
UNKNOWN DEPUTIES OF THE PARK COUNTY JAIL, and
PARAMEDIC DAVE SANDER, in his individual and official capacities with South Park
Ambulance Department,

      Defendants.

---

## ORDER

---

      This matter is before the Court on two motions to dismiss. Defendants Colorado State

Patrol ("CSP"), State Trooper Ben Evans, and Unknown CSP Supervisor (the "state defendants")

move to dismiss all claims against them. ECF No. 21. Separately, defendants Park County

Sherriff's Office ("PCSO"), Sergeant Plutt of PSCO, Sergeant Cooper of Park County Jail,

Deputy Ledvina of Park County Jail (the "county defendants") also move to dismiss. ECF No.

29. For the reasons stated below, both motions are granted in part and denied in part.

### BACKGROUND

This case arises from the arrest and overnight detention of plaintiff Donald William Schmitz on May 3, 2018. ECF No. 1. Mr. Schmitz is a printing press operator. *Id*. at 4. On May 3rd, 2018 he left work at 10:00 p.m. and drove towards his home in Bailey, Colorado. *Id*. at 4. Just after midnight, Colorado State Trooper Ben Evans found Mr. Schmitz in his vehicle, which had collided with a guardrail near Fairplay, Colorado. ECF No. 29 at 2. Trooper Evans found that Mr. Schmitz was very confused, did not know where he was going or coming from, and kept repeating that he was heading "just up the road" though Trooper Evans later learned that Mr. Schmitz had already driven past his house. ECF No. 1 at 4. Trooper Evans ordered Mr. Schmitz out of the vehicle and had to repeat specific instructions to Mr. Schmitz to unbuckle his seat belt several times before Mr. Schmitz was able to exit the vehicle. *Id*. at 4–5. While exiting Mr. Schmitz closed the door on his arm, used the vehicle for support, and moved slowly, stating that he was "waiting for his head to get out." *Id*. at 5.

Trooper Evans conducted three field sobriety tests including the horizontal gaze nystagmus test, the walk and turn, and the one leg stand, all of which Mr. Schmitz failed. *Id*. Trooper Evans observed and recorded "indicia of impairment, including slow hand movements, confusion, inappropriate answers to simple question and using the vehicle to exit." *Id*. The Trooper did not smell alcohol, noting that Mr. Schmitz only smelled of herbal tea. *Id*. Trooper Evans arrested Mr. Schmitz at the direction of his sergeant for driving under the influence of drugs ("DUID"). *Id*.

Trooper Evans transported Mr. Schmitz to Park County Jail ("PCJ"), where Mr. Schmitz agreed to have a blood test and a drug recognition expert evaluation to determine his intoxication levels. *Id*. at 6. Mr. Schmitz' complaint does not specify exactly what time he arrived at PCJ, but he was held the remainder of the night until his wife arrived at approximately 10:00 a.m. the

next day.  *Id*.  When Mr. Schmitz arrived at PCJ, he was visibly flushed, had an elevated pulse, could not support his own weight, and did not understand questions.  ECF No. 30 at 8.  His test results showed a blood alcohol concentration of zero and no signs of illicit drugs.  ECF No. 1 at 6.  At some point during the night, a urinalysis was performed, showing large quantities of blood in Mr. Schmitz' urine.  ECF No. 30 at 7.

During his detention at PCJ, Mr. Schmitz received no medical care, nor any kind of assistance or monitoring from PCJ staff.  ECF No. 1 at 6.  He continued to experience severe disorientation, confusion, and inability to support his own weight throughout the night.  *Id*.  He also lost control of his bowels, causing him to defecate in his clothing.  *Id*.  Still he received no assistance.

Mr. Schmitz' wife and son began searching for him when he failed to return home.  *Id*. They contacted the state police, who told them that Mr. Schmitz had been arrested at 5:30 a.m. despite the fact that Trooper Evans had pulled Mr. Schmitz over approximately five and half hours earlier.  *Id*.  Upon Mr. Schmitz's release, his family noticed slurred speech, drooping eyelids, and an inability to grasp items with his left hand.  *Id*. at 7.

While at the police station, an unknown medical provider told Mr. Schmitz' wife that she had contacted a pharmacy to get Mr. Schmitz' prescription history, thinking failure to take medications could have caused his symptoms.  *Id*. at 6–7.  An unknown medical provider also advised Mr. Schmitz's wife that Mr. Schmitz should go to the emergency room immediately.  *Id*. His family took him to Swedish Medical Center, where he remained admitted for three days.  *Id*. He was diagnosed with complications from his prior diagnosis of liver cirrhosis, including acute hepatic encephalopathy and acute kidney injury.  *Id*.  Elevated ammonia levels in his blood stream had likely caused his confusion the previous night.  *Id*.

Mr. Schmitz claims that his medical conditions were exacerbated as a result of defendants' collective actions. *Id.* He brings actions under § 1983 for wrongful arrest, wrongful detention, and cruel and unusual punishment against all named defendants, as well as a tort claim against all named defendants, and municipal liability claims against CSP and PCSO. *Id.* at 7–11. State and county defendants move separately to dismiss all claims against them. I will consider each motion in turn.

## STANDARD OF REVIEW

To survive a Rule 12(b)(6) motion to dismiss, the complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A plausible claim is one that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While courts must accept well-pled allegations as true, purely conclusory statements are not entitled to this presumption. *Id.* at 678, 681. Therefore, so long as the plaintiff pleads sufficient factual allegations such that the right to relief crosses "the line from conceivable to plausible," she has met the threshold pleading standard. *Twombly*, 550 U.S. at 556, 570.

## STATE DEFENDANTS' MOTION TO DISMISS

### A. <u>Eleventh Amendment Immunity</u>

The Eleventh Amendment of the United States Constitution bars claims brought in federal courts against states, state agencies, and state officials when sued in their official capacity for damages or retroactive relief. *See Edelman v. Jordan*, 415 U.S. 651, 662–63 (1974). "Because an assertion of Eleventh Amendment immunity concerns the subject matter jurisdiction of the district court, [the Court] address[es] that issue before turning to the merits of the case."

*Ruiz v. McDonnell*, 299 F.3d 1173, 1180 (10th Cir. 2002). Additionally, a suit against an officer in her official capacity "is no different from a suit against the State itself." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). However, the Eleventh Amendment does not bar suit against an officer in her individual capacity. *See Hafer v. Melo*, 502 U.S. 21, 30–31 (1991).

The Colorado Governmental Immunity Act ("CGIA") provides that a "public entity shall be immune from liability in all claims for injury which lie in tort or could lie in tort." Colo. Rev. Stat. § 24-10-106(1). However, the CGIA expressly waives sovereign immunity in several instances, including torts based on "willful and wanton conduct." *Id*. at § 24-10-118. Whether a public entity or employee is protected by this grant of immunity is a question of subject-matter jurisdiction to be decided under Rule 12(b)(1). *See Rooker v. Ouray Cty.*, 841 F. Supp. 2d 1212, 1215 (D. Colo.), *aff'd*, 504 F. App'x 734 (10th Cir. 2012) (unpublished).

State defendants argue that the Eleventh Amendment bars suit against them, including against Trooper Evans insofar as he is sued in his official capacity. ECF No. 21 at 5. Because CSP is a state agency and Trooper Evans is a state agent to the extent that he is being sued in his official capacity, and because Mr. Schmitz brings § 1983 claims for damages, the Eleventh Amendment bars such claims against them. Thus the § 1983 claims against CSP and Trooper Evans in his official capacity must be dismissed. As state defendants acknowledge however, Mr. Schmitz may sue Trooper Evans in his individual capacity. Mr. Schmitz may also proceed against defendants on his tort claims, if he can show that they fall under a CGIA waiver.

Mr. Schmitz' complaint does not specify in what capacity he sues the Unknown CSP supervisor that authorized Trooper Evans to arrest Mr. Schmitz. Insofar as the supervisor is joined in his official capacity, he must be dismissed as well. Insofar as the supervisor is joined in his individual capacity, Mr. Schmitz may proceed.

**B. <u>Qualified Immunity</u>**

State defendants argue that qualified immunity bars the remaining claims against Trooper Evans in his individual capacity. ECF No. 21 at 5. Qualified immunity protects government officials acting in their individual capacity so long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). When qualified immunity is asserted by an official, a plaintiff must satisfy the burden of showing (1) that the defendant violated a constitutional right (2) that was clearly established at the time of violation. *See Pearson v. Callahan*, 555 U.S. 223, 232 (2009). A reviewing court has discretion to address either prong first. *See Cox v. Glanz*, 800 F.3d 1231, 1247 (10th Cir. 2015).

"A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (citing *Reichle v. Howards*, 566 U.S. 658, 664 (2012)) (internal quotations omitted). "A plaintiff may show clearly established law by pointing to either a Supreme Court or Tenth Circuit decision, or the weight of authority from other courts, existing at the time of the alleged violation." *Ali v. Duboise*, 763 F. App'x 645, 650 (10th Cir. 2019) (unpublished) (citing *T.D. v. Patton*, 868 F.3d 1209, 1220 (10th Cir. 2017)) (internal quotations omitted). "[C]learly established law should not be defined at a high level of generality." *White v. Pauly*, 137 S. Ct. 548, 552 (2017) (citing *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011)) (internal quotations omitted). "Although a plaintiff need not identify a case directly on point, existing precedent must have placed the statutory or constitutional question beyond debate." *Ali*, 763 F. App'x at 650 (citing *Mullenix*, 136 S. Ct. at 308) (internal quotations omitted); *see also White*, 137 S. Ct. at 551.

Mr. Schmitz alleges that Trooper Evans violated his Fourth Amendment right against unlawful arrest and his Eighth Amendment right against cruel and unusual punishment. ECF No. 1. I examine whether Trooper Evans is entitled to qualified immunity for these claims.

1. Unlawful Arrest

"A warrantless arrest violates the Fourth Amendment unless it was supported by probable cause." *A.M. v. Holmes*, 830 F.3d 1123, 1138 (10th Cir. 2016). "Probable cause exists if facts and circumstances within the arresting officer's knowledge and of which he or she has reasonably trustworthy information are sufficient to lead a prudent person to believe that the arrestee has committed or is committing an offense." *Id.*

Mr. Schmitz argues that given the totality of the circumstances, Trooper Evans lacked probable cause to arrest him. ECF No. 30 at 2. Though he acknowledges he failed three sobriety tests, he points out that Trooper Evans detected no smell of alcohol and that Mr. Schmitz did not admit to having consumed any intoxicating substances. ECF No. 30 at 3–4. To meet his burden Mr. Schmitz must show binding or extremely persuasive precedent suggesting that a reasonable officer would have known that he lacked probable cause under these circumstances. However, Mr. Schmitz also acknowledges that he could find no case directly on point. *Id.* Though not required to provide case law directly on point, Mr. Schmitz did not present case law indicating that the constitutional question was beyond debate.

I do not address whether Mr. Schmitz' arrest in these circumstances amounted to a constitutional violation. Instead I find that existing precedent has not placed the question "beyond debate" as required in order to be "clearly established." *Mullenix*, 136 S. Ct. at 308. There are several cases in the Tenth Circuit suggesting that Trooper Evans may have had probable cause to arrest Mr. Schmitz. In *Vondrak v. City of Las Cruces*, the Tenth Circuit upheld

a district court's finding that failure of three sobriety tests gave an officer probable cause to arrest an individual. *See* 535 F.3d 1198, 1203 (10th Cir. 2008). There are also many in and out of circuit cases in which failure of sobriety tests is one factor among several creating probable cause. *See, e.g.*, *United States v. Chavez*, 660 F.3d 1215, 1224 (10th Cir. 2011) (finding probable cause when driver admitted consuming alcohol, had watery eyes, and failed sobriety tests); *Sherbrooke v. City of Pelican Rapids*, 577 F.3d 984, 987–88 (8th Cir.2009)(finding probable cause when officer smelled alcohol, driver admitted drinking, and failed one of three sobriety tests).

These cases do not establish that Trooper Evans definitively had probable cause to arrest Mr. Schmitz. However, they do make clear that the issue is not beyond debate in the Tenth Circuit. Given that Trooper Evans' behavior was not a clearly established constitutional violation, Trooper Evans is entitled to qualified immunity. The unlawful arrest claim against Trooper Evans in his individual capacity is dismissed.

2. <u>Cruel and Unusual Punishment</u>

"Under the Fourteenth Amendment due process clause, pretrial detainees are . . . entitled to the degree of protection against denial of medical attention which applies to convicted inmates under the Eighth Amendment. A claim for inadequate medical attention will be successful if the plaintiff shows deliberate indifference to serious medical needs." *Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009) (citing *Garcia v. Salt Lake County*, 768 F.2d 303, 307 (10th Cir.1985) (internal quotations omitted). A plaintiff alleging deliberate indifference must prove that objectively, the "harm suffered rises to a level 'sufficiently serious' to be cognizable" under the Eighth Amendment. *Id.* (quoting *Mata v. Saiz*, 427 F.3d 745, 752–53 (10th Cir. 2005)). She

must also prove "defendants knew [plaintiff] faced a substantial risk of harm and disregarded that risk, by failing to take reasonable measures to abate it." *Id*. at 1089.

Mr. Schmitz alleged that Trooper Evans violated his Eighth Amendment right against cruel and unusual punishment. He alleges that all defendants, including Trooper Evans, ignored the "strong likelihood that Plaintiff was in danger of serious injury and harm" due to his medical symptoms and "disregarded the known, obvious, and substantial risks to Plaintiff's health and safety by failing to provide Plaintiff with any physical assessment or evaluation and failing to provide timely or adequate treatment despite his obvious and emergent needs." ECF No. 1 at 9.

State defendants argue that Mr. Schmitz cannot state a claim under the Eighth Amendment because he was entitled to no Eighth Amendment protections. Though Eighth Amendment rights attach after a "formal adjudication of guilt," *Ingraham v. Wright*, 430 U.S. 651, 672-72, n.40 (1977), as stated above the Fourteenth Amendment entitled pretrial detainees to the same protection against denial of medication attention as inmates under the Eighth Amendment. Martinez, 563 F.3d at 1088. Therefore Mr. Schmitz can bring this claim under the Eighth and Fourteenth Amendments.

However, Trooper Evans's conduct was not a violation of clearly established law, and therefore he is entitled to qualified immunity. In order to meet his burden., Mr. Schmitz would have to show both that Trooper Evans demonstrated "deliberate indifference" by failing to provide or seek out medical care for him, and that such behavior was a clearly established constitutional violation. *Martinez*, 563 F.3d at 1088. I find that he cannot show the latter.

Mr. Schmitz did not present the Court with any case law articulating more than general principles. *See* ECF No. 30 at 7. I examined precedents myself and could find nothing supportive of Mr. Schmitz' claim. The Tenth Circuit case law on arresting officers' deliberate

indifference largely involves unconscious excessive force victims. In *Estate of Booker v. Gomez*, the Tenth Circuit held "that any reasonable officer in the Defendants' position . . . would have known that failing to check Mr. Booker's vital signs, perform CPR, or seek medical care for three minutes when he was limp and unconscious as a result of the Defendants' use of force could violate the Constitution." *Estate of Booker v. Gomez*, 745 F.3d 405, 434 (10th Cir. 2014). The Booker court relied on out-of-circuit precedent suggesting that officers have an obligation to provide care for, seek medical attention for, or at least monitor pretrial detainees who are unconscious. *See id.* (citing *Estate of Owensby v. City of Cincinnati*, 414 F.3d 596, 603 (6th Cir. 2005)); *id.* (citing *Tlamka v. Serrell*, 244 F.3d 628, 633 (8th Cir. 2001)). However, these precedents are too factually distinct from the instant case. Mr. Schmitz, unlike Mr. Booker and the other plaintiffs in these cases, was conscious, breathing, speaking, and, until recently, driving. Though Mr. Schmitz need not have identified a case with identical facts to his own, these cases could not have made it obvious to Trooper Evans that under the circumstances, failure to ensure that Mr. Schmitz was treated constituted deliberate indifference. *See Ali*, 763 F. App'x at 650 ("Nor was it 'obvious' from prior case law establishing the contours of the right that [the officer's] actions would violate [plaintiff's] First Amendment rights.").

*Martinez v. Beggs*, 563 F.3d 1082 (10th Cir. 2009), is also instructive. Officers found the plaintiff drunk, incoherent, and having trouble walking. *See id.* at 1090. Upon arrest he was not medically screened and was left alone in a receiving cell, where he had a heart attack and subsequently died. *See id.* The Tenth Circuit found that the officers were not deliberately indifferent because there was no evidence they subjectively knew of and disregarded the risk of death by heart attack. *See id.* This case suggests that deliberate indifference requires knowledge and disregard of a specific risk.

Mr. Schmitz alleges that Trooper Evans knew of his lack of intoxication after Paramedic Dave Sanders administered a blood test that found no alcohol in his bloodstream. ECF No. 30 at 6. He claims that because of this knowledge, Trooper Evans knew at the very least that "there was a medical problem" yet still sought no medical assistance. *Id*. However, there is no case law suggesting that confusion in the absence of intoxication is sufficient to indicate that there exists a substantial risk to the plaintiff's safety that would constitutionally require officers to seek medical assistance. Mr. Schmitz' later symptoms, including defecation and disorientation lasting many hours, are not relevant here because these occurred after Trooper Evans had left Mr. Schmitz in the care of PCJ. Though I am inclined to agree with Mr. Schmitz that Trooper Evans behavior is concerning, I cannot find that his conduct violated clearly established law.[1] The cruel and unusual punishment claim against Trooper Evans in his individual capacity is dismissed.

### C. **State Law Tort Claim**

Mr. Schmitz also asserts a state law tort claim against Trooper Evans for failure to provide Mr. Schmitz medical assistance, and against CSP for vicarious liability based on Trooper Evans' actions. ECF No. 1 at 10–11. Mr. Schmitz alleges that the Colorado Governmental Immunity Act ("CGIA") waives any immunities state defendants may claim. "The CGIA establishes governmental immunity from suit for public entities and their employees in tort cases, but it also waives immunity in certain circumstances." *Lopez v. City of Grand Junction*, 2018 COA 97, ¶ 16, 2019 WL 1894741 (Colo. Apr. 29, 2019). Among other things, the CGIA waives

---

[1] Again, my holding is limited to the clearly established element, and I do not address whether Trooper Evan's conduct amounted to deliberate indifference. Indeed, as addressed under the CGIA claim, Mr. Schmitz successfully alleges Trooper Evan's conscious disregard, suggesting Trooper Evans might have been deliberately indifferent. However because the clearly established element was clear, I do not address the constitutional violation.

governmental immunities over tort claims that result from "willful or wanton conduct." C.R.S. §
24-10-118.

To overcome immunity under the CGIA for willful and wanton conduct, the CGIA
requires "requires that a plaintiff set forth in his complaint specific facts which support his claim
that public employees acted willfully and wantonly; conclusory allegations are insufficient."
*Wilson v. Meyer*, 126 P.3d 276, 282 (Colo. App. 2005) (internal quotations omitted). Willful and
wanton conduct is not only negligent, but exhibit[s] conscious disregard for safety of others."
*Martinez v. Estate of Bleck*, 2016 CO 58, ¶ 6 (quoting *Moody v. Ungerer*, 885 P.2d 200, 205
(Colo. 1994)) (internal quotations omitted). When a plaintiff fails to properly allege the willful
and wanton nature of a defendant's conduct, this Court may lack subject-matter jurisdiction. *See
Feltman v. Europe*, 18-CV-3113-WJM-STV, 2019 WL 6215445, at *8 (D. Colo. Nov. 21, 2019).

Mr. Schmitz asserts that the tort in question was willful and wanton. ECF No. 30 at 9.
Yet state defendants point out that Mr. Schmitz' complaint labels Count V a negligence claim.
ECF No. 1 at 11. State defendants also argue that Mr. Schmitz has not met the higher pleading
standard required to state a willful and wanton conduct claim against a public employee under §
24–10–110(5)(a) of the CGIA.

1. Trooper Evans

I find that Mr. Schmitz has sufficiently alleged willful and wanton conduct on the part of
Trooper Evans by claiming that Trooper Evans consciously disregarded his safety. He has
plausibly alleged Trooper Evans knew Mr. Schmitz was in danger of serious injury or harm:
"Defendants knew (either through actual or constructive knowledge) that there was a strong
likelihood that Plaintiff was in danger of serious injury and harm, as made known by Plaintiff's
obvious impairment, symptoms, injuries and manifestations of physical pain." ECF No. 1 at 9.

Trooper Evans knew that Mr. Schmitz manifested symptoms of impairment but knew that he had consumed no alcohol and that the symptoms must have some other cause. This is enough to establish that Trooper Evans was conscious of a risk to Mr. Schmitz safety.

Mr. Schmitz has also plausibly alleged that Trooper Evans disregarded this risk "by failing to provide Plaintiff with any physical assessment or evaluation, and failing to provide timely or adequate treatment, despite his obvious and emergent needs." *Id*. Trooper Evans brought Mr. Schmitz to the county jail and alerted no one of Mr. Schmitz's likely need for medical care.

By alleging conscious disregard of Mr. Schmitz's serious medical condition, Mr. Schmitz has met the heightened pleading standard required under the CGIA and is therefore not entitled to immunity. *See Robinson v. City & Cty. of Denver*, 39 F. Supp. 2d 1257, 1264 (D. Colo. 1999). The motion to dismiss the state tort claim against Trooper Evans is denied.

2. CSP

Mr. Schmitz also asserts that CSP failed to prevent Trooper Evans' unlawful conduct. ECF No. 1 at 10–11. Because Mr. Schmitz has plausibly stated a claim for willful and wanton conduct under the CGIA against Trooper Evans, he may also proceed on his claim against CSP as Trooper Evans' supervisor for vicarious liability. *See, e.g.*, *Peterson v. Arapahoe Cty. Sheriff*, 72 P.3d 440, 444 (Colo. App. 2003) (finding that plaintiff had sufficiently pled a vicarious liability claim under the CGIA where plaintiff successfully alleges willful and wanton conduct against deputies.). The motion to dismiss the state tort claim against CSP is denied.

**COUNTY DEFENDANTS' MOTION TO DISMISS**

County defendants allege that they are entitled qualified immunity regarding all of Mr. Schmitz' constitutional claims against them. Again, I examine each claim in turn.

**A. <u>Wrongful Detention</u>**

The Fourth Amendment prohibits government officials from detaining a person absent probable cause. *Manuel v. City of Joliet, Ill.*, 137 S. Ct. 911, 913 (2017). Mr. Schmitz argues he was wrongfully detained by county defendants because his arrest lacked probable cause.

As discussed regarding his wrongful arrest claim against Trooper Evans, Mr. Schmitz has not been able to find binding or persuasive precedent suggesting that it is clearly established that Trooper Evans lacked probable cause. Nor have I. Therefore, I must find that the county defendants are entitled to qualified immunity on Mr. Schmitz's wrongful detention claim and it must be dismissed.

**B. <u>Deliberate Indifference</u>**

Mr. Schmitz next states a cruel and unusual punishment claim against county defendants for disregarding "the known, obvious, and substantial risks to Plaintiff's health and safety by failing to provide Plaintiff with any physical assessment or evaluation, and failing to provide timely or adequate treatment, despite his obvious and emergent needs." ECF No. 1 at 9. County defendants correctly interpret the claim against them as a claim for deliberate indifference under the Eighth and Fourteenth Amendments. *See Martinez*, 563 F.3d at 1088 (citing *Garcia*, 768 F.2d at 307) ("Under the Fourteenth Amendment due process clause, pretrial detainees are . . . entitled to the degree of protection against denial of medical attention which applies to convicted inmates under the Eighth Amendment. A claim for inadequate medical attention will be successful if the plaintiff shows deliberate indifference to serious medical needs.") (internal quotations omitted). I first examine whether Mr. Schmitz has sufficiently alleged a constitutional violation, and second whether the law is clearly established.

1. <u>Constitutional Violation</u>

Deliberate indifference has an objective and subjective component. *Id.* The objective component is satisfied if the "harm suffered rises to a level 'sufficiently serious' to be cognizable" under the Eighth Amendment. *Id.* (quoting *Mata v. Saiz*, 427 F.3d 745, 752–53 (10th Cir. 2005)). The objective harm suffered is not limited to the symptoms presented at the time the jail employee had contact with the detainee. *See Mata*, 427 F.3d at 753. Rather the plaintiff can establish objective harm by showing that the officer's delay in providing medical care caused her to experience either considerable pain and suffering over several hours, *see, e.g.*, *Oxendine v. Kaplan*, 241 F.3d 1272, 1278 (10th Cir. 2001); *Sealock v. Colorado*, 218 F.3d 1205, 1210 (10th Cir. 2000), or lasting damage, *see Mata*, 427 F.3d at 754.

Mr. Schmitz alleges that due to the indifference of the defendants, his medical condition was "greatly exacerbated." ECF No. 1 at 7. He alleges that after his detainment, he was diagnosed with acute heptatic encephalopathy and acute kidney injury, both of which were complications from a previously diagnosed "liver malfunction." *Id.* Prior to and during his detention, ammonia was seeping into his blood stream. *Id.* During his detention he experienced disorientation, loss of bowel control, confusion, slurred speech, drooping eyelids, and "inability to grasp items with his left hand." *Id.* He was hospitalized for the three days following his detention. *Id.* Taking these allegations as true, I find it plausible that Mr. Schmitz suffered sufficiently serious harm to meet the objective component.

Defendants argue that Mr. Schmitz' harm was not sufficiently serious because he cannot show that the delay in receiving medical care caused by his detention caused substantial harm. They are correct that "not every twinge of pain suffered as a result of delay in medical care is actionable." *Oxendine*, 241 F.3d at 1278. However, Mr. Schmitz' complaint can be interpreted to plausibly allege both considerable pain and suffering over several hours and lasting harm. He

alleges that the delay "greatly exacerbated" his conditions and resulted in his spending the following three days hospitalized, suggesting plausible lasting effects of his detainment. He also describes being unable to communicate or understand what was being communicated to him, being unable to support himself, experiencing severe disorientation, defecating himself, and receiving no assistance for any of these symptoms. Though not the traditional manifestations of pain and suffering, I find it plausible that the physical and mental suffering experienced during his detention was severe enough to meet the objective component.

In contrast to the objective component, the subjective component is satisfied by showing that "defendants knew [plaintiff] faced a substantial risk of harm and disregarded that risk, by failing to take reasonable measures to abate it." *Id*. at 1089. To satisfy the subjective component, the plaintiff may show that the defendant knew of the substantial risk of harm "from circumstantial evidence" or "from the very fact that the risk was obvious." *Farmer v. Brennan*, 511 U.S. 825, 842 (1994). The plaintiff must then also show that the defendant disregarded that risk. *See Martinez*, 563 F.3d at 1089.

County defendants argue that any failure to provide medical care was inadvertent and therefore without the knowledge required for a constitutional violation. ECF No. 29 at 8–10. I disagree. Mr. Schmitz has alleged that the county defendants knew he had been in a car accident. ECF No. 1 at 5. They knew he was unable to walk by himself and that Trooper Evans had to support him when entering the facility. ECF No. 31 at 7. They knew that he was flushed, had an elevated pulse, that his tests reflected no alcohol but significant quantities of blood in his urine, and that he did not understand questions and could not communicate appropriately. *Id*. They knew he defecated in his clothing while in holding. ECF No. 1 at 7; ECF No. 29 at 8. Mr. Schmitz alleges that a medical provider contacted a pharmacy to determine if his failure to take

medications were the cause of his symptoms, suggesting they knew intoxication was not the cause. ECF No. 1 at 6–7. He alleges medical staff at the jail advised Mr. Schmitz' wife to take her husband to the hospital immediately after he was released. *Id*. at 7. All together Mr. Schmitz presented a picture of an individual undergoing serious medical symptoms that defendants knew were not the result of intoxication.

Had the county defendants reasonably believed that Mr. Schmitz' was intoxicated, I might not find they had knowledge of a substantial risk of harm. *See, e.g.*, *Martinez*, 563 F.3d at 1091 (finding defendants lacked knowledge of a substantial risk when plaintiff was conscious, on his feet, argumentative, cognizant of his arrest, and exhibiting characteristics of an intoxicated person). However, given that Mr. Schmitz has plausibly alleged county defendants' affirmative knowledge of his lack of intoxication, the symptoms county defendants were aware of were enough to infer knowledge of a substantial risk of harm.[2]

Mr. Schmitz has also successfully alleged that county defendants disregarded that risk by failing to provide him any medical attention. Though medical staff at the jail suggested that Mr. Schmitz' wife should bring him to the hospital upon release, parties agree that no action was taken to address the risk of harm that county defendants knew existed. Through this direct and

---

[2] Importantly, none of the individual county defendants argue that they personally lacked the knowledge required to constitute a deliberate indifference constitutional violation. Rather they argue that under the facts alleged they collectively lacked sufficient knowledge to have been deliberately indifferent. ECF No. 29 at 8–9. It is possible that at the summary judgment stage, individual defendants may be able to present facts refuting their personal participation in the constitutional violation, and Mr. Schmitz' burden to show individual participation will be much higher. *See Ledbetter v. City of Topeka*, 318 F.3d 1183, 1187 (10th Cir. 2003). My ruling is confined to the conclusion that based on Mr. Schmitz' recitation of the facts, which I must assume as true, and defendants' responses, Mr. Schmitz has sufficiently alleged that defendants collectively had sufficient knowledge to meet the deliberate indifference standard. *See Estate of Martinez v. Taylor*, 176 F. Supp. 3d 1217, 1226 (D. Colo. 2016) (citing *Ledbetter*, 318 F.3d at 1187) ("For the purposes of the present motion [to dismiss], the Court will assume that plaintiffs sufficiently allege that there is an 'affirmative link' between each deputy defendant's conduct and the constitutional deprivation even though the deputies' roles in the events leading to Martinez's death were limited. Defendants do not raise this issue in the motion to dismiss.")

circumstantial evidence of the county defendants' knowledge of Mr. Schmitz' condition, I find it plausible that defendants knew of and disregarded the substantial risk of harm to Mr. Schmitz.[3] *See Burke v. Regalado*, 935 F.3d 960, 994 (10th Cir. 2019) (finding subjective element met when "[d]espite his obvious need, defendants either dismissed plaintiff as a malingerer without undertaking any investigation into his condition or abdicated their gatekeeping roles by failing to relay the problem to medical staff").

Because Mr. Schmitz has sufficiently alleged both objective and subjective harm, I find that Mr. Schmitz has sufficiently alleged a constitutional violation under the first prong of qualified immunity.

## 2. Clearly Established Law

Moving to the second prong of the qualified immunity test, Mr. Schmitz must have alleged facts that make out a violation of a clearly established right. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). The issue is whether the right was sufficiently clear to put a reasonable officer on notice that what he was doing violates that right. *See Mullenix*, 136 S. Ct. at 308 (2015).

It is clearly established that a prison official's deliberate indifference to an inmate's serious medical needs violates the Eighth Amendment. *See Estelle*, 429 U.S. at 104*; Lopez v.*

---

[3] County defendants argue that Mr. Schmitz' failure to alert prison officials of his need for medical assistance is fatal to his claim as in *Mitchell v. Maynard*, 80 F.3d 1433 (10th Cir. 1996). In *Mitchell*, the plaintiff alleged that he was "cold and shivering as a result of the loss of body heat and had sweat and mucus running out of his mouth as well as several broken fingers." 80 F.3d at 1444. Yet after a guard noticed his condition, he received treatment. He did not allege that his eventual treatment was insufficient. *Id*. The court found that the plaintiff had shown no evidence of defendants' knowledge of an unreasonable risk or denial of care because the guards provided treatment as soon as they noticed his condition. *Id*. Defendants ignore many differences between *Mitchell* and the instant case. For example, Mr. Schmitz has alleged defendants' knowledge of an unreasonable risk. More importantly, Mr. Schmitz never received any care, and that his need for medical assistance manifested largely in his disorientation, inability to answer questions, rendering him clearly unable to ask for medical assistance.

*LeMaster*, 172 F.3d 756, 764 (10th Cir.1999).  It is also clearly established that delay in medical care constitutes an Eighth Amendment violation where the plaintiff can show the delay resulted in substantial harm, which can be satisfied by showing "lifelong handicap, permanent loss, or considerable pain."  *Mata*, 427 F.3d at 751.

The conduct alleged in Mr. Schmitz' complaint can be summed up as follows: County defendants knew he was not intoxicated and knew that he manifested symptoms including severe disorientation, confusion, inability to support his own weight, and loss of bowel control.  They also believed the symptoms required emergency care, as indicated by their suggestion to Mr. Schmitz's wife upon his release.  Despite this, they failed to provide him with any sort of medical assistance during his lengthy detainment, including even any basic monitoring of his state.  For the reasons below, I find that the officials were on fair notice that this conduct was unconstitutional.

There are two strains of Tenth Circuit case law on failure to provide medical care.  One focuses on the healthcare providers' failure to correctly diagnose or treat inmates and detainees.  *See, e.g.*, *Mata*, 427 F.3d 745.  The other strain focuses on prison officials' prevention or denial of detainee's access to medical care or medical personnel capable of evaluating the need for treatment.  *See, e.g.*, *Colbert v. Bd. of Cty. Comm'rs for Okla. Cty.*, 414 F. App'x 156, 161 (10th Cir. 2011) (unpublished).

Mr. Schmitz' claims fall into both categories.  County defendants Jennifer Plutt, Sergeant Cooper, Deputy Ledvina, and other unknown PCJ deputies were all jail officials who Mr. Schmitz alleges should have ensured he was seen by appropriate medical personnel.  He also joins "unknown medical personnel" at PCJ whom he claims failed to provide him with adequate

care or ensure that he was seen by someone who could do so.  I consider both the healthcare providers and the jail officials in turn.

        a.   <u>Medical Personnel</u>

   The Tenth Circuit has held that "[a]ccidental or inadvertent failure to provide adequate medical care, or negligent diagnosis or treatment of a medical condition, do not constitute a medical wrong under the Eighth Amendment."  *Ramos v. Lamm*, 639 F.2d 559, 575 (10th Cir. 1980).  However, it is also clearly established that:

> "If . . . the medical professional knows that his role in a particular medical emergency is solely to serve as a gatekeeper for other medical personnel capable of treating the condition, and if he delays or refuses to fulfill that gatekeeper role due to deliberate indifference, it stands to reason that he also may be liable for deliberate indifference from denying access to medical care."

*Sealock*, 218 F.3d at 1211.

   In *Sealock v. Colorado*, 218 F.3d 1205, 1210 (10th Cir. 2000), an inmate was referred to a physician's assistant for treatment of unexplained chest pain.  The Tenth Circuit concluded that the physician's assistant acted with deliberate indifference if he had failed to summon an ambulance despite knowing the inmate had chest pain and admitting that he would have summoned an ambulance if he knew an inmate had chest pain.  *See id*.  Those facts would support the inference that the physician's assistant "intentionally disregarded his practice of summoning an ambulance."  *Self v. Crum*, 439 F.3d 1227, 1231 (10th Cir. 2006) (citing *Sealock*, 218 F.3d at 1211).

   In this case, the unknown PCJ medical personnel performed a urine test that found blood in Mr. Schmitz' urine.  They also contacted a pharmacy to determine if failure to take medication caused his symptoms, knowing intoxication had not.  Following that, Mr. Schmitz received absolutely no medical attention, despite defendants' awareness of his lack of intoxication, and

his manifestation of other serious symptoms. Mr. Schmitz also alleges that medical staff told

Mr. Schmitz' wife that she should take her husband to the emergency room immediately

following release. ECF No. 1 at 6.

This presents a striking similarity to the facts in *Mata*, in which the Tenth Circuit found

deliberate indifference when a medical provider knew of chest pain and yet "completely refused

to assess or diagnose [plaintiff's] condition at all." *Mata*, 427 F.3d at 758. Here, as in *Mata*,

"[a]s a result of [the provider's] absolute failure to follow the required protocols, contact the

appropriate medical personnel, and/or attempt to assist [plaintiff] in any fashion, there is

evidence [plaintiff] had to endure unnecessary pain and suffering for several additional hours

that did not serve any penological purpose." *Id*. (internal quotations omitted). *Mata* put

defendants on notice that a constitutional violation occurs when "medical professional

completely denies care although presented with recognizable symptoms which potentially create

a medical emergency." *Self*, 439 F.3d at 1232 (summarizing *Mata*).

Though it involved a prison official rather than a medical provider, I find the Tenth

Circuit's opinion in *Colbert* is also quite informative here. In *Colbert*, an official in a juvenile

detention center was told that a juvenile in her care had a knot on his head and was running a

temperature, and later observed herself that the juvenile "had vomited and defecated himself,

was not talking normally, and had a large knot on his head." *Colbert*, 414 F. App'x at 161. The

official believed the juvenile should have been taken to the hospital but did not call an

ambulance or tell this to the relevant medical provider until the juvenile was found non-

responsive in his own vomit several hours later. *Id*. The Tenth Circuit held that a jury could

reasonably conclude that the official's delay in calling an ambulance after she had determined

that one was needed constituted deliberate indifference. *Id*.

As in *Mata* and *Colbert*, the facts here support an inference that the medical providing defendants knew about a serious medical condition yet failed to provide any treatment or ensure that Mr. Schmitz received attention from more qualified providers.  The facts also suggest that, just as in *Colbert* and *Sealock*, at least one medical provider believed Mr. Schmitz needed emergency care but did nothing other than tell Mr. Schmitz' wife to take him to the emergency room.  I find that these cases, the most recent of which is from 2011, should have put the PCJ medical providers on notice that their conduct amounted to a constitutional violation.

      b. <u>PCJ Officials</u>

Deliberate indifference may also occur "when prison officials prevent an inmate from receiving treatment or deny him access to medical personnel capable of evaluating the need for treatment." *Sealock*, 218 F.3d at 1211.  In *Sealock*, a prison official refused to drive an inmate with severe chest pain to the hospital, claiming it was snowing and no vans were available, and instead offered him an antacid.  *Id.*  *Sealock* and cases interpreting it have clearly established a constitutional violation occurs when "jail officials, confronted with serious symptoms, took no appropriate action at all to treat them."  *Spradley v. LeFlore Cty. Det. Ctr. Pub. Tr. Bd.*, 764 F. App'x 692, 702 (10th Cir. 2019) (unpublished) (citing *Sealock*, 218 F.3d 1205); *Burke v. Regalado*, 935 F.3d 960, 994; *Colbert*, 414 F. App'x 156.

Here the jail officials were confronted with symptoms that Mr. Schmitz has sufficiently alleged were quite serious.  The jail officials do not contest that they took any action at all to treat those symptoms.  ECF No. 29 at 3.  As a result of these allegations, I find that the PCJ officials were on notice that their conduct amounted to a constitutional violation.

Defendants argue that for both the medical providers and PCJ officials, Mr. Schmitz's symptoms did not "demonstrate an objective need for immediate medical intervention under

clearly established law." ECF No. 39 at 4. In defendant's view, the only way a violation could meet the clearly established prong is if a plaintiff manifested symptoms identical to those in a previous Tenth Circuit case. The qualified immunity standard is not so stringent. Though clearly established law should not be defined with a high level of generality, "a plaintiff need not identify a case directly on point." *Mullenix*, 136 S. Ct. at 308. In the context of deliberate indifference, I interpret this as indicating that a plaintiff need not demonstrate identical symptoms to those in a previous case. Rather she must demonstrate that given the severity of her known symptoms, a reasonable officer would have known the unlawfulness of failing to provide her with medical care. *See id.* (holding that a right is clearly established when a "reasonable official would have understood that what he is doing violates that right").

Although I did not find, nor was presented with any case law involving a detainee or inmate with precisely the same symptoms as Mr. Schmitz, under preexisting law a reasonable officer should have known the unlawfulness of failing to provide Mr. Schmitz medical care. Thus I cannot grant qualified immunity to individual county defendants on this claim at this stage.

### C. <u>Municipal Liability</u>

Mr. Schmitz also alleges that PCSO is liable for the individual county defendants' deliberate indifference constitutional violation. "A suit against a sheriff in his official capacity is an action against the entity that employs him"—here, Park County. *Estate of Martinez v. Taylor*, 176 F. Supp. 3d 1217, 1230 (D. Colo. 2016) (citing *Pietrowski v. Town of Dibble*, 134 F.3d 1006, 1009 (10th Cir. 1998)).

To establish municipal liability under § 1983, a plaintiff must show "(1) that a municipal employee committed a constitutional violation, and (2) that a municipal policy or custom was the

moving force behind the constitutional deprivation." *Myers v. Okla. Cty. Bd. of Cty. Comm'rs*, 151 F.3d 1313, 1316 (10th Cir. 1998); *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978) (establishing that local governmental units are "persons" subject to § 1983 liability).

As discussed, Mr. Schmitz has failed to establish the underlying wrongful detention Fourth Amendment violation. Therefore, he cannot establish municipal liability for that claim. However, Mr. Schmitz has successfully alleged a deliberate indifference claim against individual county defendants, and has therefore succeeded on the first element of municipal liability.

A plaintiff may establish a custom or policy in a variety of ways. *See Bryson v. Okla. City*, 627 F.3d 784, 788 (10th Cir. 2010) (listing examples). Mr. Schmitz' complaint asserts several customs or policies that caused the constitutional violation: that PSCO (1) knew its "medical policies, practices and/or customs posed substantial risks to the health and safety of detainees" and "failed to take reasonable steps to alleviate those risks;" (2) failed to provide "constitutionally sufficient medical training and supervision;" and (3) encouraged, ratified, and/or approved of the acts and/or omissions alleged herein." ECF No. 1 at 10.

    1.  Failure to adopt

Mr. Schmitz' argument that PCSO knew its policies and practices posed substantial risks to detainees and failed to alleviate them is best interpreted as a failure to adopt claim. "When the liability theory rests on a county's 'failure to act,' the plaintiff must show that the county's inaction was the result of 'deliberate indifference.'" *N.E.L. v. Douglas Cty., Colo.*, 740 F. App'x 920, 932 (10th Cir. 2018) (unpublished), *reh'g denied* (July 17, 2018), *cert. denied sub nom.* 139 S. Ct. 1320 (2019) (quoting *Hinton v. City of Elwood*, 997 F.2d 774, 782 (10th Cir. 1993)). The "deliberate indifference standard may be satisfied when the municipality has actual or

constructive notice that its action or failure to act is substantially certain to result in a constitutional violation, and it consciously or deliberately chooses to disregard the risk of harm." *Barney v. Pulsipher*, 143 F.3d 1299, 1307 (10th Cir. 1998).

Mr. Schmitz has not met his burden of alleging facts that would show PCSO's deliberate indifference. His complaint does allege that PCSO is responsible for creation and enforcement of policies at PCJ. ECF No. 1 at 3. But beyond that, it contains no other facts that would suggest deliberate indifference on the part of the municipality, as opposed to the individual jail officials. He does not identify any specific actions or omissions by any policy-makers within PCSO, nor facts suggesting PCSO was aware of other similar incidents. *See London v. Beaty*, 612 F. App'x 910, 914 (10th Cir. 2015) (unpublished) (upholding dismissal of *Monell* municipal liability claim for failure to show deliberate indifference because plaintiff failed to identify a policy-maker, specific action taken by a policy-maker, or the municipality's knowledge of previous unlawful incidents).

Even if Mr. Schmitz had presented facts establishing PCSO's deliberate indifference, he has not alleged causation. The complaint states only that there is

> an affirmative causal link between the aforementioned acts and/or omissions in being deliberatively indifferent to Plaintiff's serious medical needs, health and safety and violating Plaintiff's civil rights, and the policies, practices and/or customs described herein which the PCSO and CSP promulgated, created, implemented and/or possessed, and Plaintiff's injuries and damages as alleged herein.

ECF No. 1 at 10. These allegations are conclusory rather than factual and do not meet his burden. *See Rodriguez*, 2014 WL 4627274, at *5 (citing *City of Canton*, 489 U.S. at 391, for the proposition that the "relevant causation requires a determination of whether plaintiff's injury would have been avoided" had the municipality not failed in the alleged respect).

In his response to defendants' motion to dismiss Mr. Schmitz argues that he is not obligated to make any specific allegations regarding PCSO's policies and practices as this stage. ECF No. 31 at 10. However, even "at the pleading stage," plaintiffs must allege facts suggesting the municipality can be held liable under a *Monell* theory and cannot rely solely on conclusory statements. *See Waller v. City & Cty. of Denver*, 932 F.3d 1277, 1285 (10th Cir. 2019) (requiring plaintiff to allege facts in complaint showing a causal link between the constitutional violation and the city's act or omission); *see also Rodriguez v. Chavez*, 12-CV-01071-PAB-MJW, 2014 WL 4627274, at *4–5 (D. Colo. Sept. 16, 2014) (holding plaintiff had failed to allege sufficient facts, rather than conclusory statements, upon which court could conclude that municipality's custom or policy was moving force behind plaintiff's injuries.).

    2.  <u>Failure to train</u>

Mr. Schmitz argues that PCSO is liable for its failure to provide constitutionally sufficient medical training and supervision. Again, Mr. Schmitz must show facts alleging PCSO's deliberate indifference: A municipality "cannot be held liable for its failure to train or supervise its [employees] unless the [municipality's] policymakers 'can reasonably be said to have been deliberately indifferent to the need' for further training or supervision." *Bryson*, 627 F.3d at 789 (quoting *City of Canton*, 489 U.S. at 396).

On this issue Mr. Schmitz provides only a single conclusory statement: "PCSO and CSP failed to provide constitutionally sufficient medical training and supervision to PCSO and CSP staff." ECF No. 1 at 10. Mr. Schmitz has not met his burden of alleging specific facts that could show PCSO's deliberate indifference to their staff's need for further training or supervision. As discussed under the previous theory, Mr. Schmitz has also not made any factual allegations showing causation.

3. <u>Ratification</u>

Mr. Schmitz states that PCSO encouraged, ratified or approved of the alleged constitutional violations. A municipality can be held liable when "a final decision maker ratifies an employee's specific unconstitutional actions, as well as the basis for these actions." *Bryson*, 627 F.3d at 790. When the alleged unconstitutional action is taken by a person other than the municipal policymaker—here, the defendant jail officials—liability may attach where that official's position "is subject to review by the municipality's authorized policymakers and the authorized policymakers approve [the jail official's] decision and the basis for it." *Moss v. Kopp*, 559 F.3d 1155, 1169 (10th Cir. 2009); *Bryson*, 627 F.3d at 790.

Again, Mr. Schmitz' only statement regarding this allegation is a conclusory one. He does not specify any individual who is subject to review by a policy-maker, nor a policy-maker that ratified or encouraged the unconstitutional decision.

Mr. Schmitz notes that while he was in custody at PCJ he was "not coherent during his incarceration and is unable to provide information as to who he interacted with, who may or may not have checked on his well-being, or the like." For this and other reasons, Mr. Schmitz argues that requiring detailed allegations "is unnecessary and an impossible burden" for him to meet. Though asserting that he has adequately set forth his *Monell* claims, he asks the court for leave to amend should the court find any deficiencies. The difficulty of presenting a plausible *Monell* claim at the pleading stage have been noted. *See Reitz v. Cty. of Bucks*, 125 F.3d 139, 145 (3d Cir. 1997). These difficulties would increase given Mr. Schmitz' condition while in custody. Any motion for leave to amend would be considered by the Court under Rule 15(a)(2).

**D. State Law Tort Claim**

As discussed above, in order to bring a claim under the CGIA, Mr. Schmitz must "set forth in his complaint specific facts which support his claim that public employees acted willfully and wantonly'; conclusory allegations are insufficient." *Wilson v. Meyer*, 126 P.3d 276, 282 (Colo. App. 2005) (quoting *Robinson v. City & Cty. of Denver*, 39 F. Supp. 2d 1257, 1264 (D. Colo. 1999)). Willful and wanton conduct is "'not only negligent, but exhibit[s] conscious disregard for safety of others.'" *Martinez*, 2016 CO 58, ¶ 6 (quoting *Moody v. Ungerer*, 885 P.2d 200, 205 (Colo. 1994)).

Mr. Schmitz's brings this claim against PCSO, which he argues is vicariously liable for the torts committed by defendants Cooper, Ledvina, Plutt, and other unknown deputies at PCJ. ECF No. 1 at 11. I found above that Mr. Schmitz successfully alleged deliberate indifference on the part of PCJ officials. Deliberate indifference satisfies the standard for conscious disregard. *See Bd. of Cty. Comm'rs of Bryan Cty., Okla. v. Brown*, 520 U.S. 397, 414 (1997) (finding conscious disregard amounted to deliberate indifference). Therefore Mr. Schmitz has sufficiently alleged willful and wanton conduct by the individual county defendants.

Because Mr. Schmitz has plausibly stated a claim for willful and wanton conduct under the CGIA against the PCJ officials, he may also proceed on his claim against PCSO for vicarious liability. *See, e.g.*, *Peterson*, 72 P.3d at 444. The motion to dismiss the state tort claim against PCSO is denied.

## ORDER

1.  State defendants' motion to dismiss, ECF No. 21, is GRANTED in part and DENIED in part. The Court dismisses plaintiff's wrongful arrest claim in its entirety; plaintiff's cruel

and unusual punishment claim against CSP, Trooper Evans, and Unknown CSP Supervisor; and plaintiff's supervisor and official capacity liability claim against CSP.

2. County Defendants' motion to dismiss, ECF No. 29, is GRANTED in part and DENIED in part. The Court dismisses plaintiff's wrongful detention claim in its entirety; plaintiff's cruel and unusual punishment claim against PCSO; and plaintiff's supervisor and official capacity liability claim against PCSO.

3. The Court's order [ECF No. 33] staying discovery is lifted. The Court requests that counsel jointly contact Chambers within fourteen days to reset the scheduling conference.

DATED this 30th day of January, 2020.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge